UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 16 CR 463 |
| v. ) | |
| ) | Honorable Virginia M. Kendall |
| JUAN JIMENEZ, *et al.*, ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT DENAVA'S MOTION TO DISCLOSE WITNESS INFORMATION**

Defendant Miguel Denava seeks the names and contact information of individuals he believes are eyewitnesses to an assault that is charged in Count Two of the second superseding indictment. Defendant's motion confuses his counsel's obligations with those of the government's. Just because the defense may have an obligation to conduct an independent investigation does not mean that the government is required to assist him in that investigation (thus, the "independence" of the defense investigation). In fact, the Seventh Circuit has clearly stated that the government is not required to disclose witness names and contact information. Here, the government went beyond its obligations and informed the witness (Witness A) by letter that the defense would like to speak with the witness and provided the defense attorney's contact information. The government is not required to do more, especially in a case involving serious, legitimate concerns about witness safety and the witnesses' own concerns about their safety. Defendant's motion should be denied.

**ARGUMENT**

The government expects its evidence at trial will show that in September 2013, the Latin Kings sought to retaliate against the Spanish Vice Lords for their attack on a ranking member of the Latin Kings. As part of these retaliation efforts, defendant Denava drove into Spanish Vice Lord territory and crashed his large vehicle into a victim's car. Several Latin Kings then dragged the victim out of his car and severely beat him, leaving him with serious and permanent injuries. Witness A observed the attack on the victim.

As part of discovery, the government produced an FBI report of an interview with Witness A and Witness A's grand jury transcript. For Witness A's safety and the safety of Witness A's family members, the government redacted their names from the produced material.[1] Defense counsel asked the government for the name and contact information for Witness A and Witness A's family members. The government declined to provide this information to defense counsel but did offer to provide defense counsel's contact information to Witness A in case the witness desired to speak with the defense. The defense did not respond to this offer, but the government sent a letter to Witness A with the defense's contact information. (*See* Ex. A.) Presumably, in light of Denava's motion, Witness A is not interested in speaking with the defense and has declined to contact defense counsel.

Beyond the letter, the government also will be filing a witness list disclosing witness names on February 25, 2019 pursuant to the Court's order. R. 1403. The

---

[1] The government inadvertently failed to redact a last name in one instance in the FBI report.

witness list will contain Witness A's name. It will not contain the names of Witness A's family members because the government does not intend to call them as witnesses.

The government's disclosures thus far and its intended disclosures in its witness list are well beyond what it is required to provide under the Constitution and Rule 16. The Seventh Circuit could not be clearer on this point:

> Moreover, "[t]here is no general constitutional right to discovery in a criminal case."
>
> . . .
>
> The law is clear, however, that the Constitution does not require that a defendant in a noncapital case be provided with a list of all prospective government witnesses. Nor does Rule 16 entitle a defendant to this information. In fact, Congress rejected a proposal that would have required the government and the defendant to exchange the names and addresses of their witnesses three days before trial. The conference committee expressed concern that such a requirement would discourage witnesses from testifying and would lead to "improper contact directed at influencing their testimony."

*United States v. Napue*, 834 F.2d 1311, 1317 (7th Cir. 1987) (internal citations omitted).

There are very serious witness safety concerns in this case. These concerns are outlined in greater detail in the government's motion for an anonymous jury. R. 1161. Both that motion and this response are focused on protecting third parties from harassment, threats, and anxiety. To summarize, the defendants in this case are charged with being members of a violent street gang whose purpose was criminal activity, including murder, attempted murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, intimidation, extortion, robbery, and witness tampering. The gang established, preserved, and protected control over their

territory, operations, and profits through the use of threats, intimidation, and violence, including murder. The Latin Kings also sought to evade accountability for their crimes through threats of, and by the use of, murder, violence, and intimidation against witnesses and victims. The second superseding indictment contains allegations of several acts of witness tampering.

Previously, this Court recognized that "defendants here stand charged repeated acts of violence, including murder, witness tampering and witness intimidation," such that "witness intimidation is always to be feared." R. 1047 at 3. Further, the Court observed that "acts of intimidation and retaliation have already been documented in the record": "one defendant was found to have violated the conditions of his bond by 'communicating with and threatening a potential witness,' and another, who had pleaded guilty, moved for an emergency transfer from the MCC to another jail after he was 'confronted and physically threatened with bodily harm by individuals who were told that he was a cooperating witness in a pending Latin King case.'" *Id*. (record citations omitted).

Since the Court's observations, twenty-eight defendants have pleaded guilty to these charges and admitted to participating in this violent criminal gang and to its illegal purposes and activities. Several have admitted to engaging in acts of witness intimidation. The Court's conclusion that "disclosure of the § 3500 material in this case could have potentially serious implications for the safety of third parties" rings even truer today in light of the admissions by co-conspirators in their guilty pleas to murders, attempted murders, shootings, stabbings, and witness intimidation as part

of their participation in the same conspiracy with which the trial defendants are charged. And, the Court's conclusions about serious implications for the safety of third parties apply just as much to witnesses who may testify at trial.

These well-documented safety concerns counsel against imposing additional disclosure obligations on the government in circumstances that go to the heart of witness safety. *United States v. Urena*, 989 F. Supp. 2d 253, 262 (S.D.N.Y. 2013) (denying defense's request for witness's name in redacted discovery in RICO prosecution of a street gang because government had shown good cause due to witness safety); *United States v. Santiago*, 174 F. Supp. 2d 16, 39 (S.D.N.Y. 2001) (similar).

For these reasons, the government requests that defendant Denava's motion be denied.

                                          Respectfully submitted,

                                          JOHN R. LAUSCH, JR.
                                          United States Attorney

By:   */s/ Vikas Didwania*
       DEREK OWENS
       VIKAS DIDWANIA
       JOHN COOKE
       BRIAN KERWIN
       Assistant United States Attorneys
       219 S. Dearborn Street, Suite 500
       Chicago, Illinois 60604
Dated: February 13, 2019       (312) 353-5300